NANCY J. NICHOLS, Respondent, v. THE OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

No. 1392.    (70 Pac. 996.)

1. **Evidence: Injury to Passenger: Hypothetical Question: Omission of Proven Facts.**

In an action against a carrier for injury to a pregnant woman, occasioned by a collision, plaintiff's expert witness was asked a hypothetical question as to the cause of her miscarriage, which, while detailing her condition and conduct for the week between the accident and the miscarriage, omitted the then proven facts that plaintiff had walked a mile and a half; that she was menstruating on the evening of the accident, which condition grew worse, accompanied by increasing pain; that she concealed her plight even from her husband; and that by the middle of the week she was so weak that she could hardly sit up in a conveyance in which she took a fifty-mile drive. *Held*, that the question was improper.

2. **Non-Expert Witness: Conclusion.**

In an action by an injured passenger, it is improper to ask plaintiff's non-expert witness the cause of plaintiff's sleeplessness, as the question calls for a conclusion.[1]

3. **Evidence: Injury to Passenger: Hypothetical Question Inclusion of Facts Unproved.**

In an action by an injured passenger, where defendant's expert witness has detailed the treatment he thinks should have been given plaintiff after the accident, which differs from that actually administered, a hypothetical question on cross-examination as to whether plaintiff's condition might not have been the same, even if the treatment suggested had been given, is improper, as based upon a state of things not proven.

(Decided December 20, 1902.)

[1]Hamer v. Bank, 9 Utah 215, 33 Pac. 941; Saunders v. Southern Pac. Co., 15 Utah 334, 49 Pac. 646.

Appeal from the Third District Court, Salt Lake County.—
*Hon. C. W. Morse*, Judge.

Action to recover damages for personal injuries alleged
to have been received while plaintiff was a passenger on one
of the defendant's trains. From a judgment in favor of the
plaintiff, the defendant appealed.

REVERSED.

*P. L. Williams, Esq.*, and *Geo. H. Smith, Esq.*, for
appellant.

The rule of law is that a hypothetical question may
assume any facts which the evidence tends to establish, but
it must include and be based upon all the material facts, and
this is especially true of material undisputed facts. Thomp-
son on Trials, No. 610; People v. Vanderhoof, 71 Mich. 158;
Levinson v. Sands, 81 Ill. App. 578; Davis v. State, 35 Ind.
496.

Hypothetical questions put to an expert must not assume
the existence of facts of which there is no evidence to support.
Thompson on Trials, sec. 606; Reber v. Herring, 115 Pa. St.
599; North Amer. Acc. Ass. v. Woodson, 64 Fed. 689; see,
also, Haish v. Payson, 107 Ill. 365; Bomgardner v. An-
drews, 55 Iowa 638; Williams v. Brown, 28 Ohio St. 547;
State v. Anderson, 10 Oregon 448; Greeno v. Roark, 56 Pac.
(Kan. 1899), 329.

*H. S. Tanner, Esq.*, for respondent.

STATEMENT OF FACTS.

Early on the morning of May 1, 1900, two of the defend-
ant company's trains collided. Plaintiff was a passenger for
hire in one of these trains, and at the time of the collision
plaintiff and her sister-in-law were in the aisle of the car,
returning from the ladies' toilet. By the collision, plaintiff

25 Utah—16

was thrown on the floor of the car upon her side, and her sister-in-law fell upon her. After being raised from the aisle, somewhat dazed, plaintiff discovered but a slight scratch on one of her fingers, and at first thought she was otherwise uninjured. After sitting for a little while, she arose to go out with the other passengers to view the wreck, when she started to tremble and shake as if she were having a chill. She went out of the car and walked up to where the disabled engines had smashed together, and at that time noticed tingling or pricking and numb sensations in her hand and arm. After she returned to the car she discovered that her side was hurt, and that there were sensations of numbness in her leg. At the time of the accident, plaintiff was about seven weeks in pregnancy. Plaintiff reached her destination (Soda Springs) about noon on Tuesday, May 1, and went to a hotel for lunch; and while there a doctor was summoned to attend plaintiff's sister-in-law, but plaintiff did not have him give herself any attention. After leaving the hotel, plaintiff and her husband and others walked about one and one-half mile, to plaintiff's brother-in-law's house, where they stayed. That evening plaintiff commenced to menstruate, and that condition continued for several days, and grew worse every day that it continued. The hemorrhage was not continuous, but was present some part of every day, and was accompanied with more or less pain. She had never had such an experience before, and did not know that its indications were dangerous. Plaintiff is a married woman, and has had four children. Eight years prior to this accident she had "milk leg," which bothered her for a year or two. This was the only sickness she ever had, outside of her confinements. She remained in Soda Springs Wednesday, and on Thursday, with her husband and others, drove in a two-seated spring conveyance to Chesterfield, a distance of twenty-five miles, reaching there about two o'clock in the afternoon. They remained there that afternoon and night, returning the next day to Soda Springs by the same conveyance. While in Chesterfield,

plaintiff walked about a block and a half, and then lounged on the sofa. She was menstruating, but nothing to be alarmed at, and thought that if she was careful she would be all right. On the return trip from Chesterfield, plaintiff's condition had become so bad that she could hardly sit up in the conveyance, and then first informed her husband of her menstrual condition. About noon the next day, plaintiff and her husband left Soda Springs for Salt Lake, going to Pocatello, where she went to bed for a few hours, and they reached Salt Lake about ten o'clock the next morning. That evening, after remaining in Salt Lake all day, plaintiff took the train out to Riverton, and then drove about two miles to her home. The following morning she drove five miles in a buggy, rested a couple of hours, and drove back home. That night, just one week from the day of the accident, plaintiff suffered a miscarriage, but did not even then send for a doctor. She was confined to her bed for a week, and thereafter got around occasionally. In June following she consulted Dr. Anderson. She was still menstruating more or less for a month or more, and had pains in her back, side, leg, and arm, stinging sensations, numbness, and trembling. Upon consulting Dr. Anderson, she was advised that an operation was neccessary. Dr. Robertson also gave the same advice. Later, Dr. Pinkerton called, with Dr. Robertson, and tried to get plaintiff to accept treatment at St. Mark's Hospital, to be gratuitously furnished by the defendant company, which she did not choose to do, but secured the services of Dr. Anderson, and went to his private hospital in August, and was operated on by Drs. Anderson, Giesy, and Lewis, and was benefited by the operation. Dr. Anderson said that an examination of the sexual organs disclosed a slight enlargement of the uterus, with a small cyst at the orifice, and a slight erosion from menstruation. The uterus was enlarged, from containing a thick membrane, which was removed in the operation August 21. The treatment is called "curettement." Dr. John Givens, a specialist in nervous troubles, with a practical ex-

perience of over twenty years, and who by order of the court made a physical examination of the plaintiff during the trial, testified to the plaintiff's physical condition, and what treatment she should have received after the accident, both as to pregnant and uterine condition. The physicians testifying on both sides of the case agree in their testimony that plaintiff, upon discovering that she was menstruating, should have kept entirely quiet and taken rest, and should not have taken the drives that were engaged in, and that these drives aggravated her condition. The case was tried to a jury, who rendered a verdict for $5,500 in favor of plaintiff. A motion for a new trial was made by defendant and denied by the court, and from this ruling, and the subsequent judgment, rendered upon the verdict, this appeal is taken.

ROLAPP, District Judge, after stating the facts, delivered the opinion of the court.

The errors assigned upon this appeal are all based upon testimony admitted into the record over defendant's objection, and which appellant claims constituted prejudicial error. During the trial, Dr. Anderson, a witness for plaintiff, was asked the following hypothetical question: "Q. I would ask you, if a person during the major portion of her lifetime had been in the enjoyment of good health, except at times of confinement, and in case of suffering for some time with milk leg in the opposite leg to the one that may be injured; if a person in the enjoyment of health under such circumstances, should be on a train, and two trains collided, and if that person under those circumstances, in that collision, is thrown violently to the floor, with another person on her, and afterwards begins to menstruate, and a week later passes a mass of substance about the size of an egg, after some days' slight and then heavy menstruation—what, in your opinion, would that substance be, and what, in your opinion, would be the cause of its discharge from the patient? In addition, doctor, to those conditions which I have stated, a patient,

having but a slight show of menstruation, rests a couple of nights and a day, and takes a drive of twenty-five miles in a buggy, and then rests another night, and returns that twenty-five miles in a buggy, and then rests another night and a portion of the following day, travels a couple of hours in a train, takes rest until 3:30 in the morning, takes train again and makes another run of about three hours, rides three or four miles in a street car, and rests all day, returns this three or four miles in a street car and takes train for probably another half hour, rides in a carriage a couple of miles, and rests all night, and the following day drives before dinner five miles, and in the afternoon back home, five miles, and finds during this time that menstruation has increased, goes to bed, and on the following day has a miscarriage—what, in your opinion, doctor, has been the cause of that miscarriage?" This question was objected to because it did not contain all the material facts relating to the matter inquired about. The objection was overruled, and the witness was permitted to answer. In this we think the trial court erred. This question omits several material facts which should have been made part of the question, and without which no fair expert answer could be expected. The question omitted to make any mention of plaintiff's walk of a mile and a half, or of the fact that, notwithstanding her known pregnancy, she was menstruating on the evening of the accident, and that the same was daily getting worse, and accompanied with increasing pain, or that she concealed the fact, not even permitting her husband to be informed, although he was in her presence all the time, or of the fact that she was so weak that two or three days after the accident, and two or three days before her miscarriage, she could hardly sit up in the wagon in which she then took a drive of fifty miles. We think that all these circumstances were very material ingredients of a hypothetical question, the purpose of which was to ascertain from a medical expert the causes which had produced plaintiff's then very serious condition. At the time

the question was asked, these facts were all proven, were undisputed, and clearly material. Under such circumstances, a party is not permitted to select facts which may be advantageous to him, and omit proven facts equally material, but not so beneficial to his cause, and upon such partial facts frame a hypothetical question to be submitted to an expert witness. The purpose of all judicial investigation is the ascertainment of truth. Such purpose is wholly frustrated if a party is permitted to exclude from a hypothetical question material undisputed facts.

"In a civil case all the undisputed facts of the case must be included in a hypothetical question, both as a matter of sound principle and of reason and justice. Neither party has a right to discard an important undisputed fact because the insertion of such fact may alter or vary the answer or opinion of the witness to the prejudice of such party." People v. Vanderhoof, 71 Mich. 158, 39 N. W. 28; Levinson v. Sands, 81 Ill. App. 578; Davis v. State, 35 Ind. 496, 9 Am. Rep. 760; Vosburg v. Putney, 80 Wis. 523, 50 N. W. 403, 14 L. R. A. 226, 27 Am. St. Rep. 47.

We also think the court erred in permitting Mrs. Hansen, a non-expert witness for plaintiff, to answer the following question over the defendant's objection: "Q. Mrs. Hansen, why did you think that Mrs. Nichols was unable to sleep much during the time you slept with her?" The witness had already testified to the fact that the plaintiff did not sleep much or well. Thereafter her opinion as to the cause of such sleeplessness was wholly immaterial and incompetent. The question, in effect, required the witness to draw her conclusion from the facts and circumstances known to her, and concerning which she had already testified. Such question is improper, and the answer prejudicial error, because it invades the province of the jury, besides giving an opportunity to draw an erroneous conclusion, prompted by motives of friendly interest. Hamer v. Bank, 9 Utah 215, 33 Pac. 941; Saunders v. Southern Pac. Co., 15 Utah 334, 49 Pac. 646.

During the trial, Dr. Givens, a witness for defendant, testified to the treatment plaintiff should have received after the accident, and which, in his opinion, would have promoted her recovery, and which course of treatment differed from that which plaintiff's witnesses had testified she had in fact received. This evidence was evidently introduced for the purpose of showing the plaintiff's present condition was not the result of defendant's negligence, but caused or aggravated by plaintiff's own subsequent want of care. Upon cross-examination, plaintiff's counsel asked the witness the following question, which was permitted to be answered over the defendant's objection: "And if these conditions prevailed, and those methods have all been applied, is it not possible that it might have been that these extreme conditions might have been caused directly by that nervous shock received in the collision and not have been the result of some inadvertent care?" This hypothetical question was objected to upon the ground that it included and assumed that all the things which the witness had testified as necessary to the proper treatment of the plaintiff had been administered to her, when in fact a contrary state of facts had been shown by the testimony to exist. We think this objection should have been sustained. The hypothetical question thus submitted assumed facts which indisputably had neither been proven, nor in truth existed. Says the court in the case of Association v. Woodson, 12 C. C. A. 392, 64 Fed. 689: "It is a proposition too simple to require any citation of authorities that the material facts assumed in a hypothetical question must be proven on the trial, or, rather, that there must be evidence on the trial tending to prove them; otherwise it is error to allow them to be answered. How can we say that either the answers to the questions or the verdict of the jury would have been the same if the statements contained in the question, and not proved, had been omitted?" Had the question been in the negative, instead of the affirmative—as to whether the absence of this treatment would have affected plaintiff's present condi-

tion—then the question would have been proper, and in line with the examination allowed by the court upon the part of defendant.

We see no other errors in the record, but, for the reasons above stated, we think the trial court should have granted a new trial. It is therefore ordered that the case be reversed, with costs, and that the cause be remanded to the lower court, with directions to grant a new trial.

BASKIN, J., concurs; BARTCH, J., concurs in result.