WABASH SCREEN DOOR CO. v. LEWIS.

(Circuit Court of Appeals, Sixth Circuit.   December 6, 1910.)

No. 2,053.

1. APPEAL AND ERROR (§ 263*)—ASSIGNMENTS OF ERROR—NECESSITY OF EXCEPTIONS.

Assignments of error, based on a charge of the court to which no exceptions were taken, are not reviewable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1516; Dec. Dig. § 263.*]

2. APPEAL AND ERROR (§ 1056*)—EXCLUSION OF EVIDENCE—PREJUDICE.

Where, in an action for injuries to and death of a servant, defendant was allowed wide latitude in the cross-examination of plaintiff's physicians on the issue whether decedent's death was the result of the accident, he was not prejudiced by the court's refusal to permit a question as to whether syphilis in a patient advanced to the stage of gumma in the brain would produce headache and thrombosis, in the absence of any offer of proof that deceased was afflicted with that disease.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1056.*]

3. TRIAL (§ 296*)—INSTRUCTIONS—PREJUDICE—CURE BY OTHER INSTRUCTIONS.

Where, in an action for injuries to and death of a servant as the alleged result of the fall of a weight on his head, the court charged at defendant's request that, if the jury believed from the evidence that deceased died from a tumor caused by tuberculosis, syphilis, or other cause, it must find for the defendant, and that the burden of proof was on plaintiff to show that the death was caused by the blow, defendant was not prejudiced by a prior instruction, in which the court stated that he did not recall testimony tending to show that deceased ever had tuberculosis or syphilis.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713; Dec. Dig. § 296.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Action by Mary Lewis, as administratrix of the estate of Dock Wright, deceased, against the Wabash Screen Door Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. D. Martin, for plaintiff in error.

J. E. Bell, for defendant in error.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge. This action was commenced in the circuit court of Shelby county, Tenn., and subsequently removed to the court below; the plaintiff below being the administratrix of the deceased, who was her son, and the defendant a Minnesota corporation. The declaration states a case of personal injuries and ultimate death caused through alleged negligence. Two pleas were filed; one of not guilty, and the other of contributory negligence. Issue was joined upon the latter plea by replication. A verdict was recovered for $5,750 against the company. A motion for a new trial was over-

ruled, and judgment entered on the verdict. It is sought in this court on proceedings in error to reverse the judgment.

Plaintiff's intestate, a boy nearly 16 years of age, while in the employ of the screen door company and working about one of its machines, suffered an injury upon the head by the falling of an iron weight. The weight was fastened to a cord suspended from a lever attached to the machine. The boy seems to have been standing at a point directly under the weight when the cord separated. This happened in June, 1908, and the boy died in June, 1909. At the close of the evidence the plaintiff moved the court to direct the jury to return a verdict in her favor "for whatever damages were the natural and proximate result of the injuries"; and it was agreed in open court for the company that the motion ought to be granted, though it was insisted that according to the evidence the blow received by the boy from the fall of the iron weight did not produce his death. The motion was not in terms granted, but in the course of the charge to the jury the court stated:

"It is conceded by counsel for the defendant that it is liable for whatever damage that was sustained by reason of the weight falling on the head of plaintiff's intestate; but it says that it is not liable for the boy's death, because the weight falling on his head did not cause his death."

The issue thus presented was whether the boy's death was directly traceable to the blow. The charge was clear and full, and no exception whatever was taken to it. Further, numerous special instructions to the jury were asked by the company, and were all given by the court. Assignments of error concerning the charge are presented, but it is settled that in the absence of exceptions such assignments cannot be considered.

The only exception reserved during the trial that need be noticed concerns a question of evidence. An autopsy was held shortly after the death, which resulted in an alleged discovery of a brain tumor. After offering testimony describing the accident and the condition of the intestate, both before that event and afterward to the time of his death, and also the autopsy and its results, an hypothetical question of considerable length was put to the physician who conducted the autopsy; and this question was closed with a request to state to what in the physician's opinion the death was attributable. His answer was that "I attribute it to the traumatism or blow." The cross-examination was quite extended, and in parts was calculated to test the knowledge and experience of the witness. Finally this question was put:

"Now, doctor, suppose a patient had syphilis, where it had reached the stage that gumma was caused in the brain as the result of it, would that produce headache and thrombosis?"

Upon objection being made, counsel for the company stated that the purpose of the question was to test the knowledge of the physician, and it was submitted, also, that the burden of proof was on the plaintiff to show that the blow resulted in the death of the boy. The court asked counsel whether he expected to introduce proof that the intestate had syphilis, and on receiving a negative answer sustained the objection, to which exception was taken.

Apart from the reason assigned for ruling out the question, in view

of what the company was permitted to show and the latitude which was given to its counsel to cross-examine plaintiff's physician, we think it would have been but the exercise of a reasonable discretion if the court had denied the right through that question further to test the knowledge of the witness. Thomas v. Fidelity & Cas. Co., 106 Md. 299, 317, 67 Atl. 259; People v. Augsbury, 97 N. Y. 501, 506; Bever v. Spangler & Blake, 93 Iowa, 580, 608, 61 N. W. 1072.

If, however, it be assumed that error was committed in ruling out the question,[1] still we think it was not prejudicial error. It is not perceivable how an answer to the question could have materially affected the issue of fact touching discovery of a brain tumor during the autopsy. The only result of any importance that might have been elicited is that such symptoms and tumor as were described in the testimony could have been caused by syphilis. In other words, if an answer to the question would have shown that there might have been causes other than that of the blow, still defendant was permitted to offer enough testimony of this character to render the exclusion of syphilis as a potential cause immaterial, in the sense that it could not have been more than cumulative.

A second autopsy was held some weeks later; and, although the remains were said then to have been too far decomposed to enable the physicians to secure satisfactory results, a pleural adhesion to the right lung was discovered. One of the physicians called by the company, who was present at the second autopsy and joined in the report made of it, was permitted to testify on direct examination that this adhesion could have indicated, not that it did indicate, "the presence of tuberculosis," and, further, that it "undoubtedly did indicate pleurisy at some time or other; pleurisies are usually tuberculous." He also testified in chief:

"Q. Now, then, I want to ask further, Doctor, if there are other causes of tumor which might have been found in that body, had it not been in such a decomposed condition? A. Yes, sir. · Q. And I believe you stated that tubercular tumor is the most frequent of the causes of tumor? A. One of the most frequent. Q. I will ask you further to state, where there is no fracture of the skull, if tumors resulting many months afterwards are of frequent or rare occurrences—where there is no fracture of the skull, if traumatic tumors are of frequent or rare occurrences? A. Rare. Q. About what would be the percentage? A. I think it would be a very small percentage. Q. You have stated that you found no fracture in the skull? A. Absolutely none."

It is true, as urged by counsel, that the learned trial judge in the course of his charge stated that he did not recall "testimony tending to

[1] West Chicago St. Ry. Co. v. Fishman, 169 Ill. 196, 200, 48 N. E. 447; Uniacke v. Chicago, Milwaukee & St. Paul R. Co., 67 Wis. 108, 114, 29 N. W. 899; Vohs v. Shorthill & Co., 130 Iowa, 538, 543, 107 N. W. 417; Taylor v. Star Coal Co., 110 Iowa, 41, 45, 81 N. W. 249; West-Pratt Coal Co. v. Andrews, 150 Ala. 368, 377, 43 South. 348; Pensacola Elec. Co. v. Bissett (Fla.) 52 South. 367, 370, where it was declared to be unnecessary to go to the extent reached in some of the cited decisions; Louisville, New Albany & Chicago Ry. Co. v. Falvey, 104 Ind. 409, 415, 3 N. E. 389, 4 N. E. 908; Williams v. Great Northern Ry. Co., 68 Minn. 55, 65, 70 N. W. 860, 37 L. R. A. 199; Missouri, K. & T. Ry. Co. v. Dalton (Tex. Civ. App.) 120 S. W. 240, 243. Contra: Nichols v. Oregon Short Line R. Co., 25 Utah, 240, 247, 70 Pac. 996; People v. Dunne, 80 Cal. 34, 37, 21 Pac. 1130.

show that this dead boy ever had tuberculosis or syphilis"; and on that hypothesis he charged that, if there was no proof as to such diseases or others that would produce tumor of the brain, it would be improper to speculate upon the effect of such diseases. But on defendant's request the court specially instructed the jury later that, if it believed from the evidence that the plaintiff's intestate died "from tumor caused by tuberculosis or syphilis or other cause," it must find for the defendant. Besides, the court expressly instructed the jury that the burden of proof as to cause of the death was upon the plaintiff below. Thus the benefit of the effect of possible causes of the death other than that alleged respecting the blow, and also the claim concerning the burden of proof, were substantially secured to the defendant.

The judgment must therefore be affirmed.