[No. 16036. Department One. February 25, 1921.]

BENJAMIN M. LEVINE, *Respondent*, v. FRANCIS N. BARRY
et al., *Appellants*.[1]

WITNESSES (72)—CROSS-EXAMINATION—DISCRETION. Upon an is-
sue as to the value of the services of an attorney, cross-examination
as to the extent of his business and experience is within the discre-
tion of the court, and it is not error to limit the same as to specific
matters after it was covered by a general inquiry.

SAME (72, 79, 85)—CROSS-EXAMINATION—DISCRETION—LIMITATIONS
—ASSUMING FACTS—HYPOTHETICAL QUESTIONS. Upon an issue as to
the value of the services of an attorney, hypothetical questions to ex-
perts must be based upon the testimony in the case, but cross-ex-
amination should not be so limited and may be based upon the
party's theory of conjectural facts, and the matter does not rest in
the discretion of the court.

Appeal from a judgment of the superior court for
King county, Dykeman, J., entered April 24, 1920,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action on implied contract. Reversed.

*Charles P. Murphy*, for appellants.
*J. Grattan O'Bryan*, for respondent.

BRIDGES, J.—The respondent, Levine, brought this
action against the appellants to recover for legal ser-
vices performed by him for the appellants at their
special instance and request. The respondent in his
complaint demanded the sum of five hundred dollars.
The appellants, answering the complaint, admitted
that the respondent had performed legal services in
their behalf, but denied that the services rendered were
worth the sum of five hundred dollars, or any greater
sum than fifty dollars, which sum they paid into court
for the respondent's use. After issue joined, a trial
was had before a jury, who returned a verdict in the

[1]Reported in 195 Pac. 1003.

respondent's favor for one hundred and twenty-five dollars. This appeal is from a judgment entered on the verdict.

The principal errors assigned are that the court unduly limited the cross-examination of the respondent and the cross-examination of his expert witnesses. After eliciting from the respondent the fact that he had been engaged in the practice of law in the city of Seattle for a period of ten years prior to the time of the trial, it was sought to elicit from him the amount of business he had transacted during that period. After a number of questions had been asked and answered on this subject, he was asked to state how many cases he had tried in the superior court in the last six years. To this question an objection was interposed and sustained by the court. He was then asked if it was not a fact that he had never alone tried a case in the superior court within the six-year period named, to which the witness answered that it was not a fact. Following this, he was asked to name a case which he had so tried without assistance, to which an objection was interposed and likewise sustained. On the rulings of the court on these objections, the appellants base the contention that their cross-examination of the respondent was unduly limited.

The general rule is that an attorney, when suing on *quantum meruit* for professional services, may show not only the nature and character of the services rendered and the result attained, but may show also his standing in the profession for learning, skill and proficiency, and the experience he has had in practice. *Stanton v. Embrey*, 93 U. S. 548; *Randall v. Packard*, 142 N. Y. 47; *Clark v. Ellsworth*, 104 Iowa 442, 73 N. W. 1023.

It is perhaps the rule, also, that the attorney's adversary may show his want of skill and experience to

affect the amount of the recovery, although this branch of the question seems not to have been broached in any of the decided cases. The case most nearly approaching the question to which we have been cited is *Phelps v. Hunt,* 40 Conn. 97. There the attorney sued upon *quantum meruit.* In his case in chief, he testified in his own behalf as to the nature of the services rendered and their reasonable value. On cross-examination he was asked what his professional income was for the year in which he claimed to have rendered the services sued for, and what it was the year before, and what it was the year after. Objections were interposed and sustained to the questions, and on appeal the court held such an inquiry permissible. The court seems, however, to have rested its decision on the peculiar nature of the services performed in the particular case rather than upon a general rule. In the course of the opinion, it was said:

"Should a question arise as to the value of services, in an action brought by an attorney to recover fees, where the nature of the services performed makes the possession of certain qualifications to constitute an important element in the value of those services, evidence of professional standing is clearly admissible, and is entitled to much consideration. Such seems to have been the character of the case at bar."

But conceding the inquiry proper, the extent to which it is permitted to go must rest in the sound discretion of the trial court. Certainly the court is not required to permit inquiry into the details of the plaintiff's business during all the years he has been engaged in the practice. It is a collateral inquiry at best, and when the matter has been covered by a general inquiry, it cannot be error to exclude examination into details. Here the court permitted the general inquiry. It

stopped the inquiry only after it began to call for specific matters. We cannot hold the ruling error.

With reference to the expert witnesses, after they had testified to the value of the respondent's services based upon his narrative of the services performed, the appellant sought to elicit their opinion upon another and different state of facts; facts not shown by the evidence, but facts which the appellants stated they would offer evidence tending to prove when their side of the case was entered upon. The court sustained objections to the questions, and its ruling furnishes the foundation for the assignment that the cross-examination of the expert witnesses was unduly limited. The respondent contends, and the court seems to have held, that it is entirely within the discretion of the court whether, on cross-examination of an expert witness, it will permit hypothetical questions which are not based on the evidence then in the case. The appellant, on the contrary, maintains that, as a matter of right, he was entitled to propound questions which were based on the facts as he contended he would be able to show them to be.

This assignment of error raises a question of practice which, aside from its importance in this case, deserves serious consideration. Our discussion and decision will be limited to those expert witnesses who testify exclusively from facts stated in hypothetical questions, and not to witnesses whose opinions are based on personal knowledge of the facts from which they draw their conclusions or opinions.

We think it should at once be conceded that the proper rule is that hypothetical questions propounded on direct examination should be based upon the testimony in the case. But cross-examination should not be so limited. The plaintiff here had shown the amount

of his services and the circumstances under which they had been performed, but the defendant had not reached his part of the case, and had not had an opportunity to present his version of the facts. To say that, under these circumstances, the defendant could cross-examine plaintiff's expert witness only upon the facts as produced by the plaintiff, would be, in nine cases out of ten, to deprive him of the benefits of cross-examination, because, usually, the defendant will concede the correctness of the answer of the expert witness, based upon the plaintiff's version of the facts.

We do not think an expert witness is in exactly the same situation as the ordinary witness. He is permitted to give his opinion because he is supposed to be unprejudiced and to be skilled and learned in matters concerning which the average individual is profoundly ignorant. He is not supposed to have any knowledge of the facts of the case. Being ignorant of all the facts, he can testify only from those which are given to him in the hypothetical question. He is permitted to testify for the purpose of throwing light on the question on trial. Such being the situation, the defendant should have been permitted to propound to plaintiff's expert hypothetical questions based upon his theory of what the facts were and not be confined to the facts as shown by his adversary.

An ordinary illustration will show the point we are trying to develop: Suppose that, in a personal injury case, the chief question involved is whether or not a motorman had used reasonable efforts to stop his street car. The plaintiff produces testimony showing that the grade was level and the track dry and at its best for stopping purposes. He produces an expert and submits to him a question based on the testimony just recited. It is defendant's contention, which in due

course he will undertake to prove, that there was a down grade and that the track was slippery, and the conditions bad for stopping. If, under these circumstances, the defendant may cross-examine only upon plaintiff's recital of the facts, then it is likely there is no use to cross-examine at all.

It is our view that the cross-examiner may rightfully propound hypothetical questions based entirely on conjectural facts for the purpose of testing the skill and knowledge of the witness, and where he has not had an opportunity to present his proof as to the facts, his hypothetical question may be based on his contention of what the facts will be as they may be developed later by his testimony, for the purpose of throwing light on the facts as they may ultimately be submitted to the jury. The privilege of such character of cross-examination is a right which does not rest in the discretion of the court, but the extent to which such cross-examination shall go does rest in the discretion of the court. The purpose of the cross-examination is not only to try to break down or weaken the testimony favorable to the other party, but also to bring out independent facts and admissions which may be of substantial benefit to the cross-examiner.

Rogers, Expert Testimony (2d ed.), § 33, lays down the rule in the following language:

"The general rule has been stated in the preceding section to be, that on the direct examination of an expert witness it is error to include in the hypothetical question an assumed state of facts which the evidence in the case does not prove or tend to prove. But on the cross-examination of the witness counsel are not similarly restricted. On the cross-examination of any witness, whether an ordinary or an expert witness, counsel are entitled to ask any questions which tend to test the accuracy, veracity or credibility of the witness, or which tend to shake the credit of the witness by injur-

ing his character, although the facts concerning which he is questioned may be, as to the main issue, irrelevant and collateral. Consequently, on the cross-examination of a witness testifying as an expert, counsel may be permitted, for the purpose of testing the skill and accuracy of the witness, to ask him hypothetical questions pertinent to the inquiry whether the facts assumed in such questions have been testified to by witnesses or not."

In Lawson, Expert Evidence (2d. ed.), p. 274, the rule is laid down as follows:

"On cross-examination it is permissible, for the purpose of testing his skill and accuracy, to ask the witness hypothetical questions pertinent to the inquiry, assuming facts having no foundation in the evidence."

In the case of *Ewing v. Hatcher*, 175 Iowa 443, 154 N. W. 869, the court said:

"It is next contended that the court erred in permitting counsel for the plaintiff, on the cross-examination of Dr. Cheshire, to propound questions which, in their nature, were not proper to be propounded on cross-examination, in that the inquiry extended beyond the direct examination, and assumed facts which were not supported by the testimony. This objection might be good if the examination were in chief, but an entirely different rule obtains in the cross-examination of an expert. Where one is called as an expert, the cross-examination need not be confined to the matters drawn out on direct examination. Other matters, independent matters, may be inquired into for the purpose of testing his knowledge and skill as an expert."

In *Dilleber v. Home Life Ins. Co.*, 87 N. Y. 79, the court announced the rule as follows:

"Upon the cross-examination of an expert, counsel may not be so narrowly confined, but may, in putting hypothetical questions, assume any facts pertinent to the inquiry, whether testified to by witnesses or not, with the view of testing the skill and accuracy of the expert; but such cross-examination must, to some ex-

tent, be under the control of the trial court. In the hypothetical questions excluded on the trial of this case no fact was inserted which was not pertinent to the inquiry and based on some evidence in the case, and hence the questions were properly excluded.''

In the case of *West Chicago S. R. Co. v. Fishman,* 169 Ill. 196, 48 N. E. 447, the court said:

"In the direct examination of an expert witness, the facts assumed in a hypothetical question should be only such as are fairly within the scope and range of the testimony. Upon cross-examination, any fact which, in the sound discretion of the court, is pertinent to the inquiry, whether testified to by anyone or not, may be assumed in a hypothetical question, with the view of testing the skill, learning or accuracy of the expert, or to ascertain the reasonableness or expose the unreasonableness of the opinion he has expressed to the jury.''

In *Bever v. Spangler,* 93 Iowa 576, 61 N. W. 1072, the court said:

"The rule is well understood, we think, that experts may be cross-examined on purely imaginary and abstract questions, assuming facts and theories which have or have not foundation in the evidence, and that the allowance of all such questions rests in the sound discretion of the court. Where such discretion is fairly exercised, we will not interfere.''

To the same effect are the following: *Williams v. Great Northern R. Co.,* 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 591; *Taylor v. Star Coal Co.,* 110 Iowa 40, 81 N. W. 249; *Louisville N. A. & C. R. Co. v. Falvey,* 104 Ind. 409, 3 N. E. 389, 4 N. E. 908; 17 Cyc. 261; 5 Ency. Evidence, 632.

It must be conceded that the rule contended for by respondent is not without support in the authorities. *McDonald v. Rhode Island Co.,* 26 R. I. 467, 59 Atl. 391; *Mayhew v. Brislin,* 13 Ariz. 102, 108 Pac. 253; *Com-*

*monwealth Bank v. Goodman,* 128 Md. 542, 97 Atl. 1005;
*Barfield v. South Highlands Infirmary,* 191 Ala. 553,
68 South. 30, Ann. Cas. 1916D 1097; *Nichols v. Ore-
gon S. L. R. Co.,* 25 Utah 240, 70 Pac. 996; *Peo-
ple v. Augsburry,* 97 N. Y. 501. We do not think
the rule for which those cases stand tends to promote
the central idea involved in all rules of evidence, which
is to fairly lay before the court and jury the facts
upon which the case is to be determined. The expert
witness, because of his superior knowledge of the sub-
ject about which he is testifying, may be a very useful
or a very misleading, or even dangerous, witness, and
as to him the rules of cross-examination should be
liberalized rather than restricted. We think the general
practice in the trial courts of this state has been in
accordance with the views we have announced and that
such practice has grown up because it tended to bring
about justice. Of course, the rule may be, and in fact
often is, abused, but the trial court is always in posi-
tion to stop the abuse. The rule is not to be con-
demned because of the inclination to abuse it, when
the remedy is at hand.

The judgment is reversed and remanded for a new
trial.

PARKER, C. J., MACKINTOSH, and HOLCOMB, JJ., con-
cur.