# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

HASSAN FARAH, an individual, ILEYS
OMAR, an individual, MARIAN MUMIN,
an individual, DAHIR JAMA, an
individual, FOUZIA M. MOHAMUD, an
individual, MARIAN ALI, an individual,
ABDIZIZ ABDULLE, an individual,
SAALIM ABUBKAR, an individual,
MOHAMED ISMAIL, an individual,
SUDI HASHI, an individual, HALI
ABDULLE, an individual, MURAYAD
ABDULLAHI, an individual, ZAINAB
AWEIS, an individual, FARDOWSA
ADEN, an individual, MARYAN MUSE,
an individual, ASLI MOHAMED, an
individual, SAHRA GELLE (a/k/a Hani
Huseen), an individual, ASHA FARAH,
an individual, ALI ADAM ABDI, an
individual, MUNA MOHAMED, an
individual, FARAH GEEDI, an individual,
AHMED HASSAN HUSSEIN, an
individual, IBRAHIM SALAH, an
individual, AHMED A. HIRSI, an
individual, and MOHAMUD A. HASSAN,
an individual,

          Appellants,

     v.

HERTZ TRANSPORTING, INC., MATT
HOEHNE, and TODD HARRIS,

          Respondents.

No. 73268-4-I

DIVISION ONE

PUBLISHED OPINION

FILED: October 3, 2016

TRICKEY, J. — Hassan Farah and other plaintiffs sued Hertz Transporting,

Inc. for employment discrimination. The jury returned a defense verdict. Farah

moved for a new trial, which the court denied. On appeal, Farah argues that the

trial court should have instructed the jury on pretext. We hold that this instruction

would have been appropriate but was not necessary. Farah's other claims do not require reversal. We affirm the trial court.

FACTS

Hassan Farah and 24 other Somali immigrants, who are practicing Muslims, worked as "shuttlers" for Hertz Transporting at Seattle-Tacoma International Airport (Sea-Tac). "Shuttlers" move rental vehicles around the grounds, for example, from where customers return the cars to locations for cleaning or maintenance.

In September 2011, Hertz implemented a break policy for its shuttlers, requiring them to "punch" out for all personal activities, including prayer. The parties dispute whether employees were required to punch out for prayer before this new policy. They agree that no one was disciplined for not punching out for prayer until September 2011.

The policy went into effect on September 30, 2011. On that day or within the first few days of October, Farah and the other plaintiffs prayed without punching out. Hertz suspended them. Then, on October 13, 2011, one of the Hertz managers sent letters to Farah and the other suspended employees, informing them that they could return to work if they would acknowledge that they had to punch out for prayer. Eight of the suspended employees signed the acknowledgment form and returned to work. When the plaintiffs did not sign the acknowledgment form, Hertz terminated their employment.

Around the time of the suspension and eventual terminations, roughly half of the shuttlers were practicing Muslims. The shuttler workforce remains about 50

2

percent Muslim.

Farah and the other plaintiffs (together Farah) sued Hertz and two of the Hertz managers for discrimination based on national origin and religion. The case proceeded to a jury trial.

Jeffrey Wilson, Hertz's manager for the Sea-Tac location in 2010 to 2011, testified at trial. Farah sought to introduce an e-mail Wilson had written to other managers about the break policies. The trial court excluded the e-mail. Other Hertz managers testified that they informed their employees about the policy by posting notices, in English, about the policy in several prominent locations, discussing it at meetings, and asking employees if they had punched out as the employees entered the prayer rooms. Many of the plaintiffs testified that they were not aware of the policy change at the time they were suspended.

During the trial, Hertz frequently objected to Farah's manner of questioning witnesses, asserting that Farah was being argumentative, repetitive, and misleading. The court sustained many of these objections. When Farah asked, outside the presence of the jury, for the court to explain its rulings, the court articulated its concern that Farah was needlessly consuming time:

> [Y]ou are focusing too much on one portion of the testimony and being redundant. And you are being theatrical in a way that is a waste of time and is inappropriately argumentative.
>
> . . . .
>
> And if we do the more theatrical approach, and redundant and argumentative approach, it's both inappropriate and takes about five times longer.[1]

The court gave the pattern jury instructions for employment discrimination

---

[1] Report of Proceedings (RP) (Nov. 12, 2014) at 187.

cases where the plaintiff alleges disparate treatment. Farah requested an instruction on a permissible inference that the jury would be allowed to draw if it disbelieved Hertz's stated reasons for terminating Farah. The court did not give the instruction. We, along with the parties, refer to this as a "pretext instruction."[2]

The jury returned verdicts for the defense. Farah moved for a new trial. The court denied his motion. Farah appeals.

ANALYSIS

Pretext Instruction

Farah argues that the trial court erred by refusing to instruct the jury on pretext. He contends that, without the instruction, the jury was not fully informed of the applicable law. Hertz responds that the instructions were adequate and that pretext instructions are inappropriate under Washington law. While the instruction would have been appropriate, it was not necessary. Thus, refusing to give the instruction was not error.

Jury instructions are sufficient when they allow parties to argue their theory of the case, are not misleading, and, when taken as a whole, inform the jury of the applicable law. City of Bellevue v. Raum, 171 Wn. App. 124, 142, 286 P.3d 695 (2012), review denied, 176 Wn.2d 1024, 301 P.3d 1047 (2013). If the trial court's jury instructions are otherwise sufficient, the court does not need to give a party's proposed instruction, though that instruction may be an accurate statement of the law. City of Seattle v. Pearson, 192 Wn. App. 802, 821, 369 P.3d 194 (2016). The trial court may decide which instructions are necessary to "guard against

_____

[2] Br. of Appellants at 52; Br. of Resp'ts at 43.

4

misleading the jury." Gammon v. Clark Equip. Co., 104 Wn.2d 613, 617, 707 P.2d 685 (1985).

We review a trial court's decision whether to give a particular jury instruction for an abuse of discretion. Clark Cty. v. McManus, 185 Wn.2d 466, 474, 372 P.3d 764 (2016). That includes, "a trial court's rejection of a party's jury instruction." Pearson, 192 Wn. App. at 820.

Here, Farah requested the following jury instruction, taken from the Eighth Circuit's model jury instructions:

> You may find that a plaintiff's religion or national origin was a substantial factor in the defendant's [sic] decision to suspend or terminate a plaintiff if it has been proved that the defendants' stated reasons for either of the decisions are not the real reasons, but are a pretext to hide religious or national origin discrimination.[3]

This instruction is an accurate statement of the law. The Supreme Court held in Reeves v. Sanderson Plumbing Products, Inc. that this inference was permissible in employment discrimination cases that rely on the McDonnell Douglas[4] burden-shifting framework. 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).[5] Washington adopted this standard for Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, cases soon after the Supreme Court announced it in Reeves. Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 178-79, 23

---

[3] Clerk's Papers (CP) at 1109; see Eighth Cir. Civil Jury Inst. § 5.20 (2014).
[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (developing a burden-shifting framework for claims brought under Title VII of the Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. 2000e-2(a)(1)).
[5] Reeves dealt with an action brought under the Age Discrimination in Employment Act of 1967, § 4(a)(1), 29 U.S.C.A. § 623(a)(1), but the Supreme Court explained that it was assuming that the McDonnell Douglas framework would apply. 530 U.S. at 142.

P.3d 440 (2001).[6]

Washington's pattern jury instructions for employment discrimination do not include a pretext instruction. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.01 (6th ed. 2012) (WPI). In fact, the comments to the instruction indicate that "an instruction or language on pretext is inappropriate." WPI 330.01 cmt. at 346. That comment cites the Washington State Supreme Court case Kastanis v. Educational Employees Credit Union, 122 Wn.2d 483, 496, 859 P.2d 26, 865 P.2d 507 (1994).

In Kastanis, the employer requested an instruction that the plaintiff had to prove that its stated reasons for firing the plaintiff were a pretext. 122 Wn.2d at 494. The court held that, while proof of pretext was necessary for the plaintiff's case to survive summary judgment, a jury instruction on pretext was unnecessary because, at trial, the plaintiff needed to meet only his ultimate burden of proving that the employer intentionally discriminated. 122 Wn.2d at 494-95. Division One of the Court of Appeals also rejected an argument that employment discrimination cases required complex burden shifting and pretext instructions. Burnside v. Simpson Paper Co., 66 Wn. App. 510, 524, 832 P.2d 537 (1992), aff'd, 123 Wn.2d 93, 864 P.2d 937 (1994). It held that, "[i]ssues of the plaintiff's prima facie case, the employer's burden to rebut with a legitimate nondiscriminatory reason, and the employee's showing of pretext are irrelevant once all the evidence is in." Burnside, 66 Wn. App. at 524. Instructions on pretext or shifting burdens would create

---

[6] Washington courts consider cases interpreting Title VII persuasive authority because the WLAD is modeled after Title VII. Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 849, 292 P.3d 779 (2013).

"needless confusion." Burnside, 66 Wn. App. at 524.

Burnside and Kastanis are not dispositive because the instructions at issue in those cases dealt with shifting burdens of proof rather than permissible inferences. In Kastanis, the employer asked the court to instruct the jury that the employee had to prove that the employer's offered business necessity explanation was a pretext. 122 Wn.2d at 493-94. In Burnside, the court did not specify what the proposed instructions at issue were but compared them to the one offered in Pannell v. Food Services of America, 61 Wn. App. 418, 431-32, 810 P.2d 952 (1991). Burnside, 66 Wn. App. at 523. The proposed instruction in Pannell included a lengthy explanation of prima facie cases, legitimate, nondiscriminatory reasons, and pretext. 61 Wn. App. at 431-32. These instructions were much more likely to confuse the jury than the one Farah requested.

No Washington cases have addressed whether a pretext instruction on permissible inferences, rather than burden shifting, is required, in light of Reeves. In the absence of controlling Washington law, this court looks to federal cases interpreting Title VII. Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 849, 292 P.3d 779 (2013). The federal courts do not provide a clear answer because there is a circuit split on this issue.

The Second, Third, Fourth, Fifth, and Tenth Circuits have endorsed the requirement, although some of the circuits have required that the plaintiff satisfy certain conditions before the court would be required to give the instruction. Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir. 1994); Smith v. Borough of Wilkinsburg, 147 F.3d 272, 280 (3d Cir. 1998); Kozlowski v. Hampton Sch. Bd., 77

Fed. Appx. 133, 144 (4th Cir. 2003);[7] Kanida v. Gulf Coast Med. Pers. LP, 363 F.3d 568, 578 (5th Cir. 2004); Townsend v. Lumbermens Mut. Cas. Co., 294 F.3d 1232, 1241-42 (10th Cir. 2002).

In Townsend, the court expressed its concern that, considering that many federal judges did not understand how a showing of pretext operated before the Supreme Court's decision in Reeves, it was unlikely that a jury would "intuitively grasp" this point of law. 294 F.3d 1241 n.5. The Fourth and Third Circuits also cited that previous confusion in the courts as proof that the permissible inference was not a matter of "common sense." Smith, 147 F.3d at 280-81; Kozlowski, 77 Fed. Appx. at 143-44.

Conversely, the First, Seventh, Eighth, Ninth, and Eleventh Circuits have explicitly held that the instruction is not required or indicated that they would be unlikely to require it. Fite v. Digital Equip. Corp., 232 F.3d 3, 7 (1st Cir. 2000); Gehring v. Case Corp., 43 F.3d 340, 343 (7th Cir. 1994); Moore v. Robertson Fire Prot. Dist., 249 F.3d 786, 789-90 (8th Cir. 2001); Browning v. United States, 567 F.3d 1038, 1040 (9th Cir. 2009), cert. denied, 559 U.S. 1067, 130 S. Ct. 2090, 176 L. Ed. 2d 722 (2010); Conroy v. Abraham Chevrolet–Tampa, Inc., 375 F.3d 1228, 1234-35 (11th Cir. 2004).

In Gehring, Judge Frank Easterbrook wrote that the instruction was unnecessary and pointed out that the plaintiff's attorney asked the jury to draw the permissible inference and "neither judge nor defense counsel so much as hinted that any legal obstacle stood in the way" of that argument. 43 F.3d at 343. Even

---

[7] This case was not published in the Federal Reporter, but may be cited for persuasive authority. GR 14.1(b); Fourth Circuit Rule 32.1.

in Kanida, a case within a circuit requiring the instruction, the court urged *en banc* reconsideration of its opinion so it could overrule an earlier panel's decision requiring the instruction. 363 F.3d at 577-78. That court pointed out that the pattern jury instruction permitted "jurors to draw the reasonable inferences" they felt the evidence justified and that instructing jurors on permissible inferences risks "confusing the jury regarding the ultimate issue a plaintiff must prove." Kanida, 363 F.3d at 576-77.

We agree with the circuits that have held the instruction is not required. While the instruction might be appropriate, the arguments in its favor are not compelling enough to hold that it is an abuse of discretion to refuse to give the instruction. The court's general instructions were sufficient for Farah to inform the jury of the applicable law and allow Farah to argue his theory of the case. The court's instructions were not misleading. Therefore, we hold that it was not error for the trial court to refuse to give Farah's proposed instruction.

### Exhibit 1929

Farah contends that the trial court erred by excluding exhibit 1929, an e-mail thread between Jeffrey Wilson and other Hertz managers. Farah argues it was admissible (1) as the admission of a party opponent or (2) under the business records exception to hearsay. Because we determine that it was an admission by a party opponent, we do not address whether it was also a business record.

This court reviews a trial court's evidentiary decisions for an abuse of discretion. State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). A trial court abuses its discretion when it exercises it on untenable grounds or for

untenable reasons. Burnside, 123 Wn.2d at 107.

*Admission of a Party Opponent*

Farah claims that, because exhibit 1929 was an admission by Hertz's manager of the Sea-Tac location, Jeffrey Wilson, the trial court erred by excluding it. We agree.

A statement is not hearsay if it is an admission by a party opponent. ER 801(d)(2). To qualify as a statement of a party opponent, it must be "offered against a party and [be] . . . a statement by a person authorized by the party to make a statement concerning the subject, or . . . a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party." ER 801(d)(2)(iii), (iv). The court may determine if a party is authorized to speak on a matter by examining "the overall nature of his authority to act for the party." Lockwood v. AC&S, Inc., 109 Wn.2d 235, 262, 744 P.2d 605 (1987).

Exhibit 1929 is an e-mail thread between several Hertz managers that begins with a message from Jeffrey Wilson, a Hertz local manager. Wilson testified that his duties included being "responsible for the efficiency of the group [of shuttlers] and sort of the day-to-day operations. Just making sure that scheduling was taken care of and that the policies and procedures were understood and enforced."[8] Wilson's e-mail explained to other Hertz managers how to make sure the shuttlers understood the policies and how those managers should enforce them. This e-mail falls squarely within his authority. The trial court held it was not the admission of a party opponent because of "Mr. Wilson's level in

---

[8] RP (Dec. 4, 2014) at 191.

10

the company."[9] This was an abuse of discretion.

*Other Bases for Exclusion*

Hertz argues that, even if exhibit 1929 is admissible as an admission of a party opponent, the trial court was right to exclude it because it was not disclosed by the discovery deadline or was unduly prejudicial under ER 403. Hertz also argues that it should be excluded because Wilson is not an agent for Hoehne or Harris. These arguments are without merit.

First, excluding exhibit 1929 because of a discovery violation would amount to a severe sanction. Before imposing that sanction, the trial court would have had to consider, on the record, whether the discovery violation was willful, if Hertz would suffer substantial prejudice because of the violation, and if a lesser sanction would suffice. Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997); Jones v. City of Seattle, 179 Wn.2d 322, 343, 314 P.3d 380 (2013) (extending the Burnet analysis to discovery violations that arise during trial). The trial court did not consider those factors. Thus, we cannot uphold the exclusion of exhibit 1929 on the basis that Farah disclosed it late.

Second, Farah's theory of the case was that Hertz designed the break policy as a way to discipline or terminate its Somali Muslim employees. Evidence of who was involved in designing and implementing the break policy was relevant to that theory. As discussed below, Wilson testified to the contents of the e-mail thread on cross-examination. His testimony drew no objections on grounds of relevancy or ER 403.

---

[9] RP (Dec. 9, 2014) at 6.

11

Finally, Hertz is correct that Wilson is not Harris's or Hoehne's agent. Wilson had no authority to speak for these two individual defendants, so they are not bound by his admissions. See Feldmiller v. Olson, 75 Wn.2d 322, 323-24, 450 P.2d 816 (1969). But that does not justify excluding Wilson's e-mail. The trial court, if it had admitted Exhibit 1929, could have instructed the jury that the exhibit was admitted only against Hertz and was not evidence against Hoehne or Harris. See Feldmiller, 75 Wn.2d at 323-24. It would still have been proper to admit it on that limited basis.

*Prejudice*

Although it was error to exclude exhibit 1929, that error does not require reversal because it was not prejudicial. Diaz v. State, 175 Wn.2d 457, 472, 285 P.3d 873 (2012). "An error is not prejudicial unless it affects, or presumptively affects, the outcome of the trial." Diaz, 175 Wn.2d at 472. There is no prejudicial error in the exclusion of an exhibit when the substance of the exhibit comes out in trial. Moore v. Smith, 89 Wn.2d 932, 941-42, 578 P.2d 26 (1978). "The exclusion of evidence which is cumulative . . . is not reversible error." Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 169-70, 876 P.2d 435 (1994).

Here, the exhibit itself would have been the same as Wilson's testimony. Farah cross-examined Wilson in detail about the e-mail thread. Farah argues that Wilson's oral testimony was not an adequate substitute for the written exhibit because Farah could not confront Wilson with his exact words. We disagree. Farah was able to tell the jury what Wilson wrote, who he said it to, and when he said it. Wilson even used the same language he had employed in the e-mail; for

example, he referred to his "end game" of having shuttlers "punching out for up to 15 minutes of prayer."[10]

<u>Limiting Instruction</u>

Farah asserts that the trial court erred by refusing to instruct the jury on the limited permissible use of testimony by James Kidd, a Hertz lead shuttler. We conclude that the trial court did not abuse its discretion by refusing to give that limiting instruction when requested.

When evidence is admitted for a limited purpose, the trial court "upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." ER 105. "Where a party fails to ask for a limiting instruction, however, he waives any argument on appeal that the trial court should have given the instruction." State v. Dow, 162 Wn. App. 324, 333, 253 P.3d 476 (2011). A party may request instructions based on unanticipated developments in the evidence "at any time before the court has instructed the jury." CR 51(a). The trial court has the discretion to give additional jury instructions once the jury has begun deliberating. CR 51(i); Daly v. Lynch, 24 Wn. App. 69, 74-75, 600 P.2d 592 (1979).

Here, the trial court admitted testimony from Kidd about union meetings over whether to ratify a new collective bargaining agreement. Hertz asked him if Tracey Thompson, a union official, said anything about the "new contract's break policy" at the ratification meeting.[11] Farah objected on hearsay grounds. Hertz responded that Thompson's remarks would go to notice. The court overruled the objection. Hertz also asked what Thompson had said regarding prayer during the

---

[10] RP (Dec. 8, 2014) at 41.
[11] RP (Dec. 9, 2014) at 197.

ratification meeting. Again, Farah objected on the grounds of hearsay but was overruled. Kidd testified that Thompson said that "if they were to elect to take mini-breaks, they could schedule their prayer time at one mini-break, maybe have a cup of tea at the next mini-break or whatever, to give them time to do both."[12]

Farah did not request a limiting instruction at any time during Kidd's testimony. He also did not request a limiting instruction when the court finalized the jury instructions the day of closing arguments.

During its closing statement, Hertz argued that Farah had notice of the new break policy:

> [HERTZ]: And again, confirming that the parties did discuss this. The expectation coming out of the negotiations is that prayer would now be part of break time, rather than in addition. We made an additional accommodation to allow that to happen.
>
> The union explains at the ratification meeting that prayer is part of and not in addition to break time.
>
> Mr. Kidd came in. He's a member of the union bargaining committee. We subpoenaed him to get him here. He came in and told you, "Yes, it was explained at the ratification meeting."
>
> [FARAH]: I'm sorry to object, your Honor, but I think counsel is making reference to things not in the record with Kidd.
>
> THE COURT: Overruled.
>
> [HERTZ]: He testified that Mohamed Hassan, one of the plaintiffs, was actually the interpreter at the ratification meeting.[13]

Farah did not request a limiting instruction after the court overruled his objection. But, on the morning of December 12, 2014, after the jury had deliberated for a full day, Farah requested a mistrial or, in the alternative, a curative

---

[12] RP (Dec. 9, 2014) at 203.
[13] RP (Dec. 10, 2014) at 125.

instruction, explaining that Kidd's testimony about Thompson's statements was only to be used for a limited purpose. The trial court denied the motion.

Farah could have requested a limiting instruction from the court before the trial court instructed the jury and deliberations began. Although Farah would have been entitled to the limiting instruction if he had made a timely request, the court was within its discretion to refuse the request when it came after a full day of deliberations. Denying Farah's belated request for an instruction was not an abuse of the trial court's discretion.

## Cross-Examination Objections

Farah assigns error to numerous trial court rulings sustaining Hertz's objections to Farah's manner of examining witnesses on the grounds that they were argumentative, repetitive, lacked a foundation, or mischaracterized other testimony. He argues that the cumulative effect of these erroneously sustained objections resulted in substantial prejudice. Because very few of these rulings were abuses of discretion, we disagree.

As Farah notes, effective cross-examination is integral to due process. Baxter v. Jones, 34 Wn. App. 1, 3, 658 P.2d 1274 (1983). "'[C]ounsel are entitled to ask any questions which tend to test the accuracy, veracity or credibility of the witness.'" Levine v. Barry, 114 Wash. 623, 628, 195 P. 1003 (1921) (quoting Rogers on Expert Testimony § 33 (2d ed.)).

But attorneys do not have free reign during cross-examination:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect

witnesses from harassment or undue embarrassment.

ER 611(a). "Courts may, within their sound discretion, deny cross-examination if the evidence sought is vague, argumentative, or speculative." State v. Darden, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002). A question is argumentative if it "seeks no facts and instead seeks agreement with the examiner's inferences, assumptions, or reasons." 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 611.19, at 552 (5th ed. 2007).

It is proper for a court to forbid questions that are misleading; for example, if they are "based upon a hypothesis that is not justified by the evidence," or are "based upon facts that are not in evidence." 5A TEGLAND § 611.19, at 552. And the court has "ample authority to curtail" repetitive questioning. 5A TEGLAND § 611.14, at 541.

Farah challenges approximately 90 allegedly erroneously sustained objections.[14] Rather than addressing each ruling, we discuss representative samples. Most of these rulings were well within the trial court's discretion.

For example, Farah repeatedly posed questions to Hertz's witnesses that would have required them to admit that there was a "plan" to treat "Somali Muslims" differently or to "get" them.[15] Farah asked:

> All right. Well, it's true, is it not, that during the March 2011 time
> frame you were basically working with Mr. Hoehne and Mr. Harris to

---

[14] In this assignment of error, Farah refers to an appendix of objections, which he submitted to the trial court with his motion for a new trial. Br. of Appellant at 3. Farah cannot incorporate another 55 pages of argument into his brief. Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998), as amended (May 22, 1998) ("[T]rial court briefs cannot be incorporated into appellate briefs by reference."). We review only the alleged errors Farah mentions in his brief.

[15] See, e.g., RP (Nov. 12, 2014) at 192-93; RP (Nov. 13, 2014) at 37, 49; RP (Dec. 4, 2014) at 55-56; RP (Dec. 8, 2014) at 28-29.

come up with a plan in order to both put the Somalis in a position where they would be written up for insubordination or put them in a position where they would basically use too much time and get written up anyway?[16]

The court properly sustained objections to this and similar questions on the grounds that they were argumentative or mischaracterized the evidence.

The trial court also sustained Hertz's objections to Farah's attempts to have witnesses point out, in the gallery, which plaintiffs had been insubordinate. Farah argues that this was a necessary part of cross-examination because it "would show that these managers were not close to [the] [p]laintiffs, did not know them as well as they claimed, and . . . would challenge each manager's credibility."[17] While the trial court allowed Farah to ask Hertz's managers for names of individuals, it sustained Hertz's objections to Farah's attempts to have them identify the individuals in the courtroom. These were not genuine attempts to elicit evidence. Forbidding them was well within the court's discretion under ER 611(a).

Farah also argues that the court improperly sustained objections on cross-examination as "asked and answered" when the subject was covered on direct examination, but he had not questioned the witness about it. In the example cited by Farah, *he* covered the subject during direct examination, when he called that Hertz employee as an adverse witness.[18] Hertz argued to the trial court that it had not raised the subject on *its* direct examination and objected to Farah revisiting the subject during his cross-examination. The court sustained the objection.

---

[16] RP (Dec. 8, 2014) at 29-30.
[17] Br. of Appellants at 43-44.
[18] C.f. Farah's direct examination of Mohamed Babou with Farah's cross-examination of Babou. RP (Nov. 17, 2014) at 142-43; RP (Dec. 3, 2014) at 123-25.

Requiring Farah to move on was within the trial court's discretion under ER 611(a)(2). The court also properly sustained "asked and answered" objections when Farah asked a witness the same question twice.

A thorough review of all the challenged rulings reveals that few were erroneous. Additionally, in nearly every instance, Farah was able to rephrase the question and receive an answer. Or he was able to read the deposition testimony in question into the record. Therefore, these erroneously sustained objections did not, individually, result in prejudice.

Nor did an accumulation of errors result in prejudice. There were 14 days of testimony in this case, with hundreds of objections by both sides, some sustained and some overruled. Any scattered errors did not meaningfully impact Farah's ability to cross-examine Hertz's witnesses.

Farah's reliance on Baxter v. Jones is misplaced. 34 Wn. App. at 3-4. There, the trial court cut short the plaintiff's cross-examination of the defendant based on time constraints. Baxter, 34 Wn. App. at 2-3. Division Three of the Court of Appeals recognized that "the court is given considerable latitude in limiting the scope of cross[-]examination" but, nevertheless, held that it was error to terminate "cross[-]examination based on a predetermined time to complete trial." Baxter, 34 Wn. App. at 4-5. Here, the erroneously sustained objections do not approach a total denial of the opportunity to cross-examine crucial witnesses.

*Waived Assignments of Error*

We do not consider Farah's third and sixth assigned errors, that the court erred by admitting hearsay testimony about a union manager's declarations, and

18

that the trial court erred in denying his motion for a new trial. Farah failed to argue the merits of either in his opening brief. Under <u>Cowiche Canyon Conservancy v. Bosley</u>, he has waived those assignments of error. 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Farah included argument on these issues in his reply brief. This was "too late to warrant consideration." <u>Cowiche</u>, 118 Wn.2d at 809.

Attorney Fees

Finally, Farah requests attorney fees. He is not entitled to fees because he is not the prevailing party.

We affirm the judgment for Hertz Transporting, Inc., Matt Hoehne, and Todd Harris, and the trial court's denial of Farah's motion for a new trial.

Trickey, J

WE CONCUR: