# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CAROL ALLREAD, an individual,<br><br>       Appellant,<br><br>    v.<br><br>CITY OF BURIEN, a Washington City,<br><br>       Respondent,<br><br>MARY EIDMANN,<br><br>       Plaintiff. | DIVISION ONE<br><br>No. 84783-0-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Following the termination of her employment with the City of Burien (the City), Carol Allread filed a complaint for damages against the City alleging interference and retaliation in violation of Washington's Paid Family and Medical Leave Act (PFMLA)[1] and wrongful discharge in violation of public policy. A jury returned a verdict in favor of the City on each of Allread's claims. Allread thereafter filed a motion for a new trial, which the trial court denied.

Allread now appeals from the trial court's order denying her motion for a new trial. Allread seeks our review of several discretionary trial court rulings and challenges the trial court's denial of her motion for a directed verdict on her claim

---

[1] Title 50A RCW.

of PFMLA retaliation. She also contends that the trial court erroneously denied her motion for a new trial. Finding no error in the challenged rulings, we affirm.

I

Carol Allread worked for the City of Burien as executive assistant to the city manager for over eight years. Allread used occasional family leave throughout her employment with the City in order to attend medical and therapy appointments for her young adult son. She worked for multiple city managers during her tenure, the last of whom was Brian Wilson. On July 24, 2020, Wilson presented Allread with a proposed separation agreement and informed Allread that her employment with the City was being terminated.

In May 2022, Allread filed an amended complaint for damages against the City, alleging that her employment was unlawfully terminated due to her use of protected family leave. The complaint alleged that, in the two years preceding the termination, Wilson had reacted angrily and dismissively in response to Allread's requests to utilize PFMLA leave. The complaint further alleged that, on June 24, 2020, Allread informed Wilson that an incident had occurred that would require her to use additional family leave. One month later, on July 24, 2020, Allread's employment with the City was terminated.

Based on these events, Allread alleged that the City had violated the PFMLA "when it retaliated against [her] for taking leave, and, when on notice of [her] intent to take additional protected leave," it "interfered with her rights by firing her and considering her leave as a negative factor in the decision, and threatening her with retaliation if she made a civil rights complaint." In addition to

asserting that the City had violated the PFMLA, Allread alleged that the termination of her employment constituted wrongful discharge in violation of public policy.

In response to Allread's complaint, the City acknowledged that Allread had been granted leave to care for her son. The City denied, however, that Allread had faced retaliation or that her employment had been terminated due to her request for, or her utilization of, such leave. The City acknowledged that it had met with Allread on July 24, 2020. However, it characterized Allread's "separation from the City [as] a no-cause layoff related to the COVID-19 pandemic."

Both the pretrial and trial periods were characterized by numerous motions in limine and extensive briefing regarding the admissibility of particular witness testimony. In one such motion, the City sought to exclude the testimony of former City employee Mary Eidmann. Eidmann had been named as co-plaintiff, along with Allread, in the initial complaint filed in this matter, although she had therein asserted different claims. While Allread asserted that the City had violated the PFMLA due to her use of family leave to care for her son, Eidmann alleged that the City had violated the Washington Law Against Discrimination[2] by failing to accommodate her disability and retaliating against her for requesting related accommodations. Like Allread, Eidmann had additionally asserted that the City had violated the PFMLA; however, Eidmann alleged that the City denied leave requests related to her own medical needs, not

---

[2] Ch. 49.60 RCW.

to those of a family member. Eidmann had additionally asserted, in the initial complaint, that she was constructively discharged her due to her disability.

Upon motion by the City, the trial court had severed Allread's and Eidmann's actions. In so ruling, the court had reasoned that,

> [a]side from the commonality of employer and nature of complaint, the claims by these two Plaintiffs have little overlap. Ms. Allread's claims revolve around whether the decision to eliminate the position Ms. Allread fulfilled arose from discrimination and retaliation or the need by the City of Burien to address emergent budget crises related to the COVID-19 pandemic. Ms. Eidmann's claims revolve around the scope of her disability and whether reasonable accommodations were responsively provided by the City of Burien. The focus of each of these two claims, once one drills down past the general commonalities, is quite different.

Thus, the court had ruled that

> [a]llowing Ms. Eidmann and Ms. Allread to present their claims before the same fact finder will likely send the message that the City of Burien, by dint of facing discrimination claims by not one but two Plaintiffs, must have committed wrongdoing. The risk of that potential prejudice outweighs the benefit of efficiency in this particular case.

Subsequent to the severance of Allread's and Eidmann's actions, the court, in this matter, granted the City's motion in limine to exclude Eidmann's testimony at trial. Allread thereafter requested "clarification" of the court's order, explaining that she was seeking to introduce testimony from Eidmann regarding "the treatment that she experienced during her employment," including that "she felt discriminated against because of a need for family medical leave." Consistent with the prior severance ruling, the trial court excluded the proffered testimony. The court reasoned that Eidmann's experiences were "[s]eparate" from and "unrelated" to those of Allread. The court concluded that, given the

4

limited relevance of the expected testimony, admitting the proffered evidence would unfairly prejudice the City by encouraging the jury to make an improper inference regarding the City's conduct.

The City additionally sought to exclude the testimony of Nancy Tosta, a former City councilmember. During trial, Allread sought to introduce testimony by Tosta regarding an executive session meeting in which she had participated as a councilmember. Allread additionally asserted that Tosta should be permitted to testify regarding Wilson's "professionalism" because, she averred, the "door ha[d] been opened" to such evidence by prior witness testimony. The parties extensively briefed and argued whether the proffered testimony was inadmissible pursuant to attorney-client or executive session privileges.

However, the trial court ultimately determined that, notwithstanding the applicability of such privileges, the record was inadequate to permit Tosta to testify regarding the "two very specific areas of examination" sought by Allread. The court explained that, based on Allread's offer of proof, the court "[didn't] even know what [Tosta was] going to say." The proffered testimony, the trial court explained, was "literally undisclosed." Accordingly, permitting such testimony would be akin to "conducting discovery in the middle of a trial," which, the court determined, would not be "appropriate." The trial court additionally rejected Allread's assertion that the "door ha[d] been opened" to testimony regarding Wilson's professionalism. However, the court ruled that it was not excluding all testimony by Tosta. Indeed, Tosta testified at trial regarding City budgetary issues.

5

Although the trial court excluded the testimony of former City employee Eidmann, another former City employee, Patricia Mejia, was permitted to testify at trial. Mejia, who was employed by the Parks and Recreation Department, testified that she was laid off at the end of 2020 when her position with the City was eliminated. During Mejia's testimony, the City objected to questions concerning Mejia's beliefs about the cause of the termination of her employment. Consistent with its ruling excluding Eidmann's testimony, the trial court sustained these objections, similarly disallowing such testimony by Mejia.

During trial, Allread moved for a "finding of spoliation" by the trial court. She asserted that such a finding was warranted based on Wilson's testimony that he had, at times, taken handwritten notes related to City matters and that he had destroyed some such notes subsequent to Allread's assertion of claims against the City. Based on Wilson's testimony, Allread sought an adverse jury instruction regarding the contents of the notes purportedly destroyed by Wilson. The trial court denied Allread's motion, concluding that there was no basis to present the jury with such an instruction.

Following six days of testimony, Allread moved for a directed verdict as to her PFMLA retaliation claim. She asserted that a provision in the proposed separation agreement presented to her by the City constituted per se retaliation because, she averred, it "threatened to contest [her] application for unemployment benefits if she alleged that her termination was the result of discrimination, harassment, retaliation, or unlawful conduct." The trial court denied Allread's motion.

6

The jury was thereafter instructed on each of Allread's three claims against the City: a claim of PFMLA interference, a claim of PFMLA retaliation, and a claim of wrongful termination in violation of public policy. The jury returned a verdict in favor of the City on each claim. Allread thereafter filed a motion for a new trial, which the trial court denied.

Allread appeals.

II

Allread challenges multiple evidentiary rulings of the trial court, asserting that the court abused its discretion by excluding certain testimony. Specifically, she contends that the trial court erred by excluding the testimony of Mary Eidmann and limiting the scope of the testimony of Patricia Mejia, both former City employees. Allread additionally asserts that the trial court abused its discretion by excluding some testimony of former City councilmember Nancy Tosta.

We disagree. Our review of these rulings is limited to determining whether the trial court abused the broad discretion afforded to it in making such rulings. Here, we conclude that the court did not. Recognizing the material differences between Allread's claims and the anticipated testimony of Eidmann and Mejia, the trial court determined that the potential for unfair prejudice toward the City outweighed the probative value of that testimony. The court additionally determined that Allread had failed to provide a sufficiently specific offer of proof for the proffered testimony of Tosta. Our review of the record indicates that the court acted well within its discretion in making these rulings.

"Admission of evidence lies within a trial court's discretion." Burnside v. Simpson Paper Co., 123 Wn.2d 93, 107, 864 P.2d 937 (1994). Accordingly, we review evidentiary decisions of the trial court for an abuse of discretion. Farah v. Hertz Transporting, Inc., 196 Wn. App. 171, 181, 383 P.3d 552 (2016). The abuse of discretion standard "recognizes that deference is owed to the judicial actor who is 'better positioned than another to decide the issue in question.'" Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 403, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)).

"A trial court abuses its discretion when its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)). "'A trial court's decision is manifestly unreasonable if it adopts a view that no reasonable person would take.'" Hi-Tech Erectors, 168 Wn.2d at 669 (internal quotation marks omitted) (quoting In re Pers. Restraint of Duncan, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" Hi-Tech Erectors, 168 Wn.2d at 669 (quoting Duncan, 167 Wn.2d at 402-03).

A

Allread first asserts that the trial court abused its discretion by excluding Eidmann's proffered testimony and limiting the scope of Mejia's testimony. This is not so. The trial court ruled, consistent with the prior severance ruling, that the

8

danger of unfair prejudice to the City outweighed the probative value of Eidmann's proffered testimony. On this same basis, the court limited the scope of Mejia's testimony. In so ruling, the trial court acted within its broad discretion to make such evidentiary rulings.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. Evidence is "probative" when it tends to prove or disprove some fact at issue in the case. Bengtsson v. Sunnyworld Int'l, Inc., 14 Wn. App. 2d 91, 105, 469 P.3d 339 (2020). "In determining whether evidence should be excluded under ER 403, trial courts are afforded broad discretion 'in balancing the prejudicial impact of evidence against its probative value.'" Bengtsson, 14 Wn. App. 2d at 107-08 (quoting Kramer v. J.I. Case Mfg. Co., 62 Wn. App. 544, 559, 815 P.2d 798 (1991)).

Here, Allread asserts that the trial court erred in excluding evidence regarding the City's alleged treatment of Eidmann and Mejia. The former City employees were expected to testify regarding purported discrimination and retaliation by the City in response to their disabilities and use of medical leave. According to Allread, the proffered evidence was relevant to demonstrate the City's unlawful motivation in terminating her own employment. She contends that the trial court abused its discretion in concluding that the potential prejudice to the City outweighed the probative value of such evidence. We disagree.

9

"Trial judges have 'wide discretion in balancing the probative value of evidence against its potential prejudicial impact.'" Bengtsson, 14 Wn. App. 2d at 99 (quoting Cole v. Harveyland, LLC, 163 Wn. App. 199, 213, 258 P.3d 70 (2011)). Here, the trial court concluded that the potential of unfair prejudice to the City outweighed the probative value of the proffered evidence. Allread intended to elicit testimony from Eidmann that she "felt discriminated against" by the City due to her need for medical leave. However, as the trial court found, Eidmann's allegations were materially dissimilar from those of Allread. Unlike Allread, Eidmann alleged that the City had failed to make reasonable accommodations for her disability. Such a claim requires consideration of a plaintiff's ability to perform her job duties and the sufficiency of the accommodations provided—neither of which are pertinent to Allread's PFMLA claim. Mejia was similarly expected to testify that she believed she had been discriminated against by the City due to her disability. Thus, unlike Allread, neither Eidmann nor Mejia had utilized family leave to care for a family member. Furthermore, different supervisors were responsible for the pertinent layoff decisions.

In light of the dissimilarities between Allread's allegations and the proffered evidence, the trial court concluded that the admission of the testimony would be unfairly prejudicial to the City because it would encourage the jury to make an "improper inference" regarding the City's culpability. Significantly, this ruling is consistent with the court's prior ruling, entered by a different trial judge, severing Eidmann's and Allread's actions against the City. There, the court

10

determined that the claims had "little overlap" and were "quite different." In severing the actions, the court ruled that allowing Eidmann's claims and Allread's claims to be presented before the same fact finder would "send the message that [the City] . . . must have committed wrongdoing," thus resulting in unfair prejudice. In disallowing certain testimony of Eidmann and Mejia, the trial court similarly determined that the admission of such testimony—particularly in light of its minimal probative value—would result in unfair prejudice to the City. The court did not abuse its considerable discretion by so ruling.

Allread's assertions to the contrary are unavailing. Indeed, on appeal, Allread nowhere addresses the prejudicial nature of the proffered evidence, with the exception of a bald assertion that its probative value "outweighs any potential prejudice."[3] Allread's contention that the trial court failed to balance the probative value of the evidence with its prejudicial impact is similarly without merit. Contrary to this assertion, the trial court considered that Eidmann's allegations are "[s]eparate" from and "unrelated" to Allread's claims, thus rendering Eidmann's testimony of minimal probative value. On the same basis, the trial court sustained the City's objections to similar testimony elicited of Mejia. In light of the minimal probative value of the proffered evidence, the court determined that the admission of the testimony would be unfairly prejudicial to the City. Thus, contrary to Allread's assertion, the trial court balanced the probative value against the potential prejudicial impact of the evidence in excluding certain testimony by Eidmann and Mejia.

---

[3] Br. of Appellant at 29.

Moreover, in asserting that such testimony has been deemed universally admissible by our Supreme Court, Allread misconstrues the decisional authority on which she relies. See Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 191 P.3d 879 (2008). In Brundridge, our Supreme Court addressed whether the trial court had abused its discretion by admitting testimony regarding the prior bad acts of an employer pursuant to ER 404(b). The court therein explained that "[i]n the context of wrongful discharge in violation of public policy, evidence of an employer's motive or intent to retaliate is relevant to assertions that . . . the employer does not have a legitimate justification for the discharge." Brundridge, 164 Wn.2d at 445-46. However, the court nowhere held that such evidence, simply because it is relevant, is necessarily admissible. Indeed, the court ultimately concluded that the evidence proffered therein "had minimal probative value" and "had the potential to prejudice the jury by leading them to believe that [the employer] was a 'bad company' in general." Brundridge, 164 Wn.2d at 447.[4] Thus, our Supreme Court's opinion in Brundridge is fully consistent with the trial court's exclusionary ruling here.

In excluding certain testimony by former City employees Eidmann and Mejia, the trial court determined that the minimal probative value of the proffered evidence was outweighed by its potential prejudicial impact. In so ruling, the court properly considered the dissimilarities between Allread's claims and the allegations of Eidmann and Mejia. Additionally, the court properly considered the

---

[4] There, the court concluded that, because the jury had "ample reason to question" the employer's safety record, any error in admitting the testimony was harmless. Brundridge, 164 Wn.2d at 447.

potential for unfair prejudice against the City, weighing that potential against the minimal probative value of the evidence. We do not find on this record that the trial court abused its considerable discretion in making these evidentiary rulings.

B

Allread next contends that the trial court abused its discretion by excluding certain testimony of former City councilmember Nancy Tosta. Specifically, Allread asserts that the court erroneously excluded purported "rebuttal" testimony concerning Wilson's character. She additionally contends that the trial court erred by disallowing testimony from Tosta regarding occurrences at executive session meetings of the City council. We disagree. The trial court did not abuse its discretion by ruling that a sole mention of Wilson's "professionalism" had not rendered admissible general character evidence concerning Wilson. In addition, the court properly excluded testimony regarding executive session meetings for which Allread had not provided a specific offer of proof. In making these rulings, the court did not err.

The trial court's rulings were preceded by extensive briefing and argument by the parties, the substance of which is necessary to understand the court's decisions. As relevant to Tosta's testimony, the City sought in a motion in limine to exclude both "reputation" opinion evidence and evidence regarding privileged communications and the opinions of elected officials, such as Tosta. The trial court granted the City's motion with regard to privileged communications but reserved for hearing the motion seeking to exclude opinion evidence from elected officials.

13

Following the hearing, the trial court explained that it would not exclude Tosta's testimony based on the record available at the time. The court requested from Allread "a more specific offer of proof," explaining: "I want to be able to understand and give meaningful guidance to you all about what [Tosta is] going to be able to say and what she's not going to be able to say. And I just need more information to do that." The court thus denied without prejudice the City's motion to exclude the testimony.

Four days into the presentation of testimony, Allread requested an order permitting testimony of Tosta to which, Allread averred, the City had "opened the door" through other witness testimony. Allread asserted that testimony by the City's human resources director, Cathy Schrock, had "directly placed Mr. Wilson's professionalism at issue." The testimony, which occurred during direct examination of Schrock by Allread's counsel, was as follows:

> Q. And you're aware that Ms. Allread testified that Mr. Wilson started the meeting by saying, "Carol this meeting isn't going to go well for you"?
> A. And I would disagree that that was said.
> Q. You disagree that she testified to that?
> A. I disagree that that's what Mr. Wilson said. I've – it's just not a professional response that I expect [of] Mr. Wilson and have witnessed for over 25 years.

Allread additionally sought to introduce Tosta's testimony regarding "actions by Mr. Wilson that occurred during Executive Session related to Ms. Allread and her case." The City, in response, sought an order excluding such testimony.

The trial court addressed the parties' competing motions at an October 18, 2022 hearing. Allread explained that Tosta would testify that "something

14

happened" in an executive session meeting of the City council that "occurred after the filing of the lawsuit" and in the presence of the city attorney. She further explained that Tosta would "testify that her interactions with Mr. Wilson were unprofessional" and that "he was disrespectful and offensive to her and others."

With regard to evidence concerning Wilson's "professionalism," the trial court ruled that Schrock's sole statement that she had witnessed a "professional response" from Wilson "for over 25 years" did not render general character evidence admissible. Schrock's testimony, the court ruled, was "more narrow and specific to the context of the questions that [Allread's counsel] was asking her." The trial court additionally ruled that Allread had not provided a sufficiently specific offer of proof regarding the executive session testimony. The court explained:

> Ultimately what I have here is a request to make a decision on what I believe is an inadequate record. . . . [I]t's really an inadequate record to be able to say that Ms. Tosta can come here and give certain testimony, because I don't even know what she's going to say.

The court noted that the proffered testimony was "to this point literally undisclosed." It explained:

> I'm not going to allow [Tosta] to come up and just be examined and all of us sit here for the first time with the jury and be conducting discovery in the middle of a trial and all of us, like, figuring out what she's going to say and then, you know, I just – I don't find that to be appropriate.

Thus, the court excluded testimony by Tosta regarding occurrences at the executive session meeting.

15

1

On appeal, Allread first asserts that the trial court abused its discretion by excluding evidence regarding Wilson's character. Allread avers that Schrock's testimony that she had observed a "professional response" by Wilson rendered such evidence admissible. We disagree. The court acted well within its discretion in determining that this sole statement by Schrock did not render admissible more general testimony regarding Wilson's character. Because the court's ruling is in accord with the pertinent evidentiary rules, we find no error.

Evidence Rule 404(a) provides that, subject to the exceptions listed therein, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." The rule sets forth the circumstances in which character evidence of the accused or the victim of a crime is admissible in criminal matters. ER 404(a)(1), (2). In civil cases, however, "[t]he general rule under Rule 404(a)" is that character evidence is not admissible "as evidence that the person was likely to have acted in conformity with that character on a particular occasion." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.3, at 478-79 (6th ed.2023). Rather, pursuant to the rule, "the circumstantial use of character evidence in a civil case is limited to impeachment under Rules 607, 608, and 609." 5 TEGLAND, supra, at 478. As relevant here, the rules provide that "[t]he credibility of a witness may be attacked or supported by evidence in the form of reputation," although such evidence "may refer only to character for truthfulness or untruthfulness," and "evidence of truthful character is admissible

16

only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise." ER 608(a).

Here, Allread sought to elicit testimony by Tosta that "her interactions with Mr. Wilson were unprofessional" and that "he was disrespectful and offensive to her and others." The trial court excluded such testimony, rejecting Allread's assertion that a sole mention of Wilson's "professional response" in other witness testimony rendered the proffered evidence admissible. On appeal, Allread asserts that the testimony is admissible pursuant to ER 404(a)(1), which provides that character evidence to demonstrate conformity therewith is admissible when "offered by an accused, or by the prosecution to rebut the same." However, this is not a criminal matter. Accordingly, ER 404(a)(1) is inapplicable. See 5 TEGLAND, supra, at 478-79.

Allread does not cite to the pertinent rule, ER 608(a), which provides an exception to ER 404(a)'s general rule of character evidence inadmissibility. However, in any event, the rule does not support Allread's claim of error. Pursuant to the rule, character evidence may be admitted to attack or support the credibility of a witness, although such evidence is limited to the witness's "character for truthfulness or untruthfulness." ER 608(a). Here, Allread did not seek, through the proffered testimony, to attack Wilson's credibility. Nor did the proffered evidence pertain to Wilson's "truthfulness or untruthfulness." ER 608(a). Rather, Allread sought to introduce evidence that Wilson was "unprofessional" and had been "disrespectful and offensive." Thus, the proffered testimony is not admissible pursuant to the pertinent evidentiary rule.

17

"A party seeking to admit evidence bears the burden of establishing a foundation for that evidence." State v. Land, 121 Wn.2d 494, 500, 851 P.2d 678 (1993). Here, Allread failed to do so. Accordingly, the trial court did not abuse its discretion by excluding the proffered character evidence.

2

Allread additionally asserts that the trial court erroneously excluded testimony by Tosta concerning occurrences at an executive session meeting of the City council. Again, we disagree.

Allread contends that the court abused its discretion by excluding the proffered testimony because, she avers, "there is no recognized Executive Session evidentiary privilege."[5] However, whether such a privilege is extant was not the basis for the trial court's exclusionary ruling. Rather, the court determined that the record was inadequate to permit Tosta's testimony, which was "literally undisclosed." The court—which had requested, but never received, "a more specific offer of proof"—explained that admitting the proffered testimony on the inadequate record provided would be akin to "conducting discovery in the middle of [the] trial" and in the presence of the jury.

As the party seeking to admit Tosta's testimony, Allread bore the burden of establishing a foundation for that evidence. Land, 121 Wn.2d at 500. Again, she failed to do so. The trial court's decision to exclude the "undisclosed" testimony was neither manifestly unreasonable nor based on untenable grounds or reasons. See Hi-Tech Erectors, 168 Wn.2d at 668-69. Accordingly, the trial

---

[5] Br. of Appellant at 65.

court did not abuse its discretion by so ruling.[6]

III

Allread additionally challenges the trial court's denial of her request for a spoliation instruction directing the jury to infer that purportedly destroyed evidence would have been unfavorable to the City. According to Allread, such an instruction was warranted due to Wilson's testimony that he had discarded some handwritten notes taken in his capacity as city manager. Again, we disagree. Allread demonstrated neither that the discarded notes were relevant to the termination of her employment nor that the City possessed culpability for the destruction of any evidence. Accordingly, the trial court properly determined that a spoliation instruction was not warranted.

"When a party intentionally withholds or destroys evidence, the trial court may issue a spoliation instruction for the jury to draw an inference that the missing evidence would be unfavorable to the party at fault." Henderson v. Thompson, 200 Wn.2d 417, 441, 518 P.3d 1011 (2022), cert. denied, 143 S. Ct. 2412 (2023). To determine whether a sanction is warranted, "[c]ourts consider the potential importance or relevance of the missing evidence and the culpability of the adverse party." Henderson, 200 Wn.2d at 441. No spoliation sanction is warranted when a party negligently fails to preserve evidence relevant to foreseeable litigation. Carroll v. Akebono Brake Corp., 22 Wn. App. 2d 845, 875,

---

[6] Although neither party cited to the pertinent local rules, we additionally note that the trial court's exclusion of this testimony is consistent with those rules. Specifically, King County Superior Court Rule 26(k)(3)(B) requires that each party provide a brief description of the relevant knowledge of each lay witness whom the party discloses as a witness for trial. With regard to testimony concerning the executive session meeting, Allread failed to do so here.

514 P.3d 720 (2022), review denied, 200 Wn. 2d 1023 (2023).  The severity of the destruction of evidence determines the appropriate remedy.  Henderson v. Tyrrell, 80 Wn. App. 592, 605, 910 P.2d 522 (1996).  "We review a trial court's decisions regarding sanctions for discovery violations for abuse of discretion." Homeworks Constr., Inc. v. Wells, 133 Wn. App. 892, 898, 138 P.3d 654 (2006).

During pretrial proceedings, Allread requested a ruling that the City had intentionally destroyed relevant evidence and, thus, had engaged in spoliation. Allread asserted that Wilson's deposition testimony, in which he stated that he had destroyed personal notes taken around the time of the termination of her employment, warranted "an adverse inference [jury] instruction as to [the notes'] contents regarding Mr. Wilson's motives in retaliating against, interfering with, and terminating Ms. Allread."  The trial court explained that it would not preclude the presentation of evidence regarding the destruction of Wilson's notes, but that it would not rule "in limine whether [it was] going to give a spoliation instruction."

Wilson thereafter testified at trial that, as city manager, he had at times made handwritten notes pertinent to his work and that he had "probably" made some notes regarding budgetary decisions.  Wilson testified that he had destroyed some such notes subsequent to the filing of Allread's lawsuit against the City.  However, he explained that he was aware of his obligation to preserve documents "[p]ertaining to Ms. Allread," and that he had not destroyed any notes that he had reason to believe would be relevant to her claims.  Allread thereafter filed a renewed motion seeking a spoliation instruction.  She asserted that, given Wilson's testimony, it was "reasonable" to believe that he would have taken notes

related to the termination of her employment.

The trial court denied Allread's motion. In so ruling, the court explained that it was solely "speculation" that Wilson's notes contained information relevant to the termination of Allread's employment. The court characterized Allread's motion as a request "to tell [the] jury to make a specific negative inference about a specific thing that was not actually testified to." Describing Wilson's testimony, the court explained:

> I heard you asking [Wilson] a very broad question about taking notes and would budget stuff have been in the notes. And I heard him be very straightforward about it, "Yep. There would have been budget stuff. Wasn't anything related to Allread." . . . [T]here wasn't any probing, any peeling back of the onion layers, any level of specificity with the questioning around what was in those notes.

Thus, the court ruled that Allread had provided no foundation on which a spoliation instruction could be properly presented to the jury.

We find no error in the trial court's ruling. In evaluating whether sanctionable spoliation had occurred, the court properly considered "the potential importance or relevance of the [purported] missing evidence." Henderson, 200 Wn.2d at 441. As the court found, the record is devoid of any indication that Wilson destroyed notes pertaining to the termination of Allread's employment. Indeed, Wilson testified that he had *not* destroyed any such notes. On this record, an instruction directing the jury to infer that Wilson's discarded notes contained information adverse to the City's position would be wholly inappropriate. Thus, the trial court did not err by denying Allread's request for such an instruction.

21

IV

Allread next asserts that the trial court erroneously denied her motion for a directed verdict as to her claim of PFMLA retaliation. According to Allread, the City's presentation of the separation agreement constituted retaliation for asserting her rights pursuant to the PMFLA. We disagree. Allread has not demonstrated that, as a matter of law, the challenged provision of the agreement constitutes a retaliatory action in response to the assertion of her rights. Thus, the trial court properly denied her motion for a directed verdict.

Judgment as a matter of law may be granted only if "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue." CR 50(a). When ruling on such a motion, the court must consider the evidence in the light most favorable to the nonmoving party. Demelash v. Ross Stores, Inc., 105 Wn. App. 508, 528, 20 P.3d 447 (2001). We review de novo a ruling on a motion for a directed verdict. Demelash, 105 Wn. App. at 528.

Washington's PFMLA provides that

[i]t is unlawful for any person to discharge or in any other manner discriminate against any employee because the employee has:
    (a) Filed any complaint, or has instituted or caused to be instituted any proceeding, under or related to this title;
    (b) Given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this title; or
    (c) Testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this title.

RCW 50A.40.010(2).

Here, Allread contends that she was entitled to judgment as a matter of

22

law on her PFMLA retaliation claim based on the separation agreement presented to her by the City on July 24, 2022. Pursuant to the proposed agreement, the City offered to Allread the equivalent of two months' salary. The agreement also included a release of claims against the City arising out of Allread's employment. In addition, as relevant to Allread's claim of error here, paragraph 4 of the agreement provided: "As further consideration, if Carol Allread applies for unemployment compensation benefits, Burien will not contest her application unless she claims that discrimination, harassment, retaliation, or other unlawful conduct was the reason for her lay off."

Allread asserts that this provision of the separation agreement constitutes retaliation in violation of the PFMLA.[7] According to Allread, the provision violates the act "by contesting her unemployment benefits because she was about to give information in connection with her unemployment proceeding, and/or testify in an unemployment hearing, about her belief that she was retaliated against and ultimately targeted for job separation because of her request for and use of PFMLA leave."[8] We disagree.

To be entitled to a directed verdict on her retaliation claim, Allread must demonstrate that the evidence established as a matter of law that she had "[g]iven, or [was] about to give, any information in connection with [an] inquiry or proceeding" relating to rights provided by the PFMLA or that she had "[t]estified, or [was] about to testify, in [an] inquiry or proceeding" related to such rights.

---

[7] Allread did not sign the separation agreement.
[8] Br. of Appellant at 37.

23

RCW 50A.40.010(2)(b), (c). These are factual matters, however, that are without support in the record. Indeed, Allread presented no evidence that the City presented her with the separation agreement because she asserted, or was about to assert, her rights pursuant to the PFMLA.

Moreover, the separation agreement does not state that the City *would* contest Allread's unemployment benefits; rather, it states that, as consideration for Allread signing and not revoking the agreement, the City *would not* contest such benefits. Only if Allread claimed "that discrimination, harassment, retaliation, or other unlawful conduct was the reason for her lay off" did the City reserve the right to defend itself against such allegations. This provision must be read in the context of the agreement as a whole. See Starr Indem. & Liab. Co. v. PC Collections, Inc., 25 Wn. App. 2d 382, 400, 523 P.3d 805, review denied, 1 Wn. 3d 1032 (2023) ("When interpreting a contract, we view the contract as a whole, interpreting particular language in the context of other contract provisions."). In other words, it must be read in the context of the subsequent paragraph of the agreement providing for a release of such claims against the City. When reading the separation agreement as a whole, as we must do, it is clear that paragraph 4 is not a retaliatory action in response to any assertion of rights pursuant to the PFMLA. Rather, the intent of the provision is to allow the City to defend itself against claims that, had Allread signed the proposed agreement, she would have agreed not to assert.

Allread has not established that, as a matter of law, paragraph 4 of the proposed separation agreement constitutes retaliation for asserting her rights

24

pursuant to the PFMLA.  Accordingly, the trial court did not err by denying Allread's motion for a directed verdict on that claim.[9]

V

Allread further asserts that the trial court erred by denying her motion for a new trial.  She contends that she is entitled to a new trial because, she avers, the jury verdict on her claim of PFMLA retaliation is contrary to law.  We disagree.  As discussed herein, the separation agreement provided to Allread by the City does not, as she contends, constitute per se retaliation in violation of the PFMLA.  We decline to review Allread's additional contention, raised for the first time in her reply brief on appeal, that she is entitled to a new trial due to purported racial bias.

"As a general rule, the trial court's decision to grant or deny a motion for a new trial will not be disturbed on appeal absent a showing of a clear abuse of discretion."  Cox v. Gen. Motors Corp., 64 Wn. App. 823, 826, 827 P.2d 1052 (1992).  "To determine whether the trial court has abused its discretion in denying a motion for a new trial, we determine whether 'such a feeling of prejudice [has]

_____

[9] Allread asserts for the first time in her reply brief on appeal that the separation agreement constitutes retaliation in violation of the PFMLA pursuant to RCW 49.44.211.  The statute provides that

> [a] provision in an agreement by an employer and an employee not to disclose or discuss conduct, or the existence of a settlement involving conduct, that the employee reasonably believed under Washington state, federal, or common law to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as against a clear mandate of public policy, is void and unenforceable.

RCW 49.44.211(1).

We do not review issues raised for the first time in a reply brief on appeal.  See, e.g., Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).  Accordingly, we decline to address the merits of this assertion.  We note, however, that the statute on which Allread relies was not enacted until June 2022, nearly two years after the City presented Allread with the separation agreement.

been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial.'" Bengtsson, 14 Wn. App. 2d at 100 (alteration in original) (internal quotation marks omitted) (quoting Alum. Co. of Am. v. Aetna Cas. & Ins. Co., 140 Wn.2d 517, 537, 998 P.2d 856 (2000)). When the reason asserted for a new trial "was predicated upon an issue of law," we review the record "for error in application of the law rather than for abuse of discretion." Cox, 64 Wn. App. at 826.

Here, Allread asserts that the jury verdict on her claim of PFMLA retaliation is contrary to the law. She contends that each of the jury's verdicts must therefore be vacated because, she avers, "[t]he jury could not consider the validity of the other claims without proper guidance on this retaliation claim."[10] Allread's assertion is without merit. As discussed above, Allread was not entitled to judgment as a matter of law on her claim of PFMLA retaliation. Thus, contrary to her assertion, the jury was not compelled to find that the City had engaged in per se retaliation based on paragraph 4 of the proposed separation agreement. Accordingly, the trial court did not err by denying Allread's motion for a new trial.

Allread additionally asserts, for the first time in her reply brief on appeal, that she is entitled to a new trial based on purported racial bias that, she avers, resulted in an unfair trial. Allread contends that "the City's Response Brief raise[d] a new ground for a new trial" because the briefing misspelled the name of former City employee Patricia Mejia.[11] According to Allread, trial counsel for

---

[10] Br. of Appellant at 69.
[11] Reply Br. of Appellant at 32.

the City mispronounced Mejia's name throughout her testimony, which, Allread asserts, indicates implicit racial bias. She contends that the purported mispronunciation constitutes "[m]isconduct of [the] prevailing party" that entitles her to a new trial. See CR 59(a)(2). Allread's argument, however, is neither timely nor reviewable on the record before us.

"A reply brief is generally not the proper forum to address new issues because the respondent does not get an opportunity to address the newly raised issues." City of Spokane v. White, 102 Wn. App. 955, 963, 10 P.3d 1095 (2000). Accordingly, "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Allread did not allege misconduct by the City or implicit racial bias in either the trial court or in her opening brief on appeal. Because these arguments were raised for the first time in Allread's reply brief, we decline to review them.

However, we note that, even had Allread's argument regarding racial bias been timely raised, she has failed to provide any record on which we could evaluate her assertion. The transcript of trial proceedings, not being an audio file, cannot demonstrate whether counsel for the City mispronounced Mejia's name at trial. Thus, we are left only with Allread's word to support her assertion. To provide us with the necessary record to review her argument, Allread was required to first raise this issue in the trial court. "[A]ppellate courts are not fact-finders." Dalton M, LLC v. N. Cascade Trustee Servs., Inc., No. 101149-1, slip op. at 21 (Wash. Aug. 31, 2023),

27

https://www.courts.wa.gov/opinions/pdf/1011491.pdf. As our Supreme Court has recognized, "[i]njection of a brand-new issue that is akin to an unpleaded claim at the appellate level creates problems for a reviewing court because the record will likely lack factual development related to that new issue." Dalton M, No. 101149-1, slip op. at 19. Indeed, it is so here.

We find no error in the trial court's denial of Allread's motion for a new trial.

Affirmed.[12]

_Dwyer, J._

WE CONCUR:

_Birk, J._          _Chung, J._

---

[12] Both Allread and the City request an award of attorney fees on appeal. As Allread is not the prevailing party on appeal, she is not entitled to such an award. See RCW 50A.40.040(3) (providing for an award of attorney fees to "the prevailing plaintiff" in a PFMLA action). The City, in its request for an award of fees, fails to identify a basis in law, contract, or equity for such an award, as required by RAP 18.1(b). Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998) (citing Austin v. U.S. Bank of Wash., 73 Wn. App. 293, 313, 869 P.2d 404 (1994)). Because the City fails to make "more than a bald request for attorney fees on appeal," it is not entitled to such an award pursuant to RAP 18.1. Wilson Court Ltd. P'ship, 134 Wn.2d at 710 n.4 (citing Thweatt v. Hommel, 67 Wn. App. 135, 148, 834 P.2d 1058 (1992)). Accordingly, we decline to grant an award of attorney fees to either party.